Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | **WILLIAM T. HART** | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5645 | **DATE** | JUNE 6, 2001 |
| **CASE TITLE** | MICHAEL CROWDER v. LARRY G. MASSANARI, etc. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Acting Social Security Commissioner Larry G. Massanari is substituted for Kenneth S. Apfel as the defendant in this case. The Clerk of the Court is directed to accordingly amend the docket. Plaintiff's motion for summary judgment [5-1] is granted and defendant's motion for summary judgment is denied. The Clerk of the Court is directed to enter judgment in favor of plaintiff and against defendant vacating the decision of the Commissioner and remanding this case for further proceedings.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 number of notices |
| | No notices required. | | |
| ✔ | Notices mailed by judge's staff. | | JUN 08 2001 date docketed |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | docketing deputy initials |
| ✔ | AO 450 form mailed by judge's staff. | ED-7 FILED FOR DOCKETING | |
| | Copy to judge/magistrate judge. | 01 JUN -7 PM 5:42 | June 7, 2001 date mailed notice |
| CW courtroom deputy's initials | | Date/time received in central Clerk's Office | mqm mailing initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL CROWDER,

        Plaintiff,

v.

LARRY G. MASSANARI, Acting
Commissioner of Social Security,

        Defendant.

No. 00 C 5645

DOCKETED

JUN 0 8 2001

## MEMORANDUM OPINION AND ORDER

On June 4, 1998, plaintiff Michael Crowder applied for supplemental security income disability benefits ("SSI") claiming to be disabled because of migraine headaches. An Administrative Law Judge ("ALJ") determined plaintiff was not entitled to benefits. Because the Appeals Council denied review, the determination of the ALJ is the final decision of defendant Social Security Commissioner.[1] Zurawski v. Halter, 245 F.3d 881, 883 (7th Cir. 2001); Smith v. Apfel, 231 F.3d 433, 437 (7th Cir. 2000). The parties have cross moved for summary judgment. This is an administrative review of the Commissioner's decision, with the undisputed facts being the administrative record.

---

[1]Pursuant to Fed. R. Civ. P. 25(d)(1), Acting Commissioner Larry G. Massanari is substituted for former Commissioner Kenneth S. Apfel.



This court must affirm, as conclusive, any findings of fact supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Zurawski, 245 F.3d at 887; Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000). This court may not decide facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. Clifford, 227 F.3d at 869.

In determining whether a claimant is disabled, the Commissioner generally employs a five-step analysis. The steps, considered in sequential order, are: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner in 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform his or her past work; and, (5) whether the claimant is unable to perform other work in the national economy. 20 C.F.R. § 416.920; Zurawski, 245 F.3d at 885; Clifford, 227 F.3d at 868 (quoting Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995)). An affirmative answer leads to the next question, except that an affirmative answer to the third or fifth question ends the analysis with a finding of disability. A negative response at any step, other than step three, results in a finding of no disability. Zurawski, 245 F.3d at 886; Clifford, 227 F.3d at 868. Through step four, the burden is on the claimant. If those

steps are proven, then the burden shifts to the Commissioner to establish step five. <u>Zurawski</u>, 245 F.3d at 885-86; <u>Clifford</u>, 227 F.3d at 868.

Here, plaintiff did not contend that he had a sufficient employment history to obtain disability insurance benefits; he only sought SSI. Although he alleged that he had been disabled since January 1, 1996, the earliest he could qualify for benefits was the June 4, 1998 date of his application. So the only pertinent question is whether he was disabled on that date or thereafter. The ALJ found that plaintiff was not currently employed and that he had a severe impairment. At step three, the ALJ found that plaintiff did not satisfy the listing for headaches, so the analysis continued. As to step four, the ALJ stated that it was unclear whether plaintiff had any relevant past history and treated step four as satisfied. At step five, the ALJ found that plaintiff's nonexertional impairments did not significantly affect his ability to perform at all exertional levels and therefore found it proper to employ the "grids," which indicated there was available work for plaintiff. Plaintiff was found not disabled.

Plaintiff was born December 17, 1960. His last employment was in March 1997 as an electrical technician hired through a temporary employment agency. Plaintiff testified that he was fired from that position because of excessive absenteeism caused by headaches. In late 1998, he was in a general assistance clerical training program, but he testified that he

was unable to complete the training because of missing too many days with headaches. The ALJ found that plaintiff has a medically determinable history of migraine headaches. However, the ALJ did not fully credit plaintiff's description of his headaches. The ALJ found that the headaches "did not significantly compromise [plaintiff's] ability to perform work at all exertional levels." However, the ALJ found that plaintiff could not work "around hazards such as unprotected heights/excavations and/or exposed/unprotected moving parts/dangerous machinery."

The ALJ noted that no medical records were provided for earlier than February 1998 and drew the inference that this meant there was no prior treatment for headaches. In February 1998, plaintiff was treated at an emergency room for complaints of more frequent headaches. "Other than the claimant's statement regarding his symptoms, the physical examination, including the claimant's neurological and motor status were normal." Motrin was prescribed. Plaintiff returned to the emergency room in April 1998 requesting a refill of medications. On May 28, 1998, plaintiff was taken to the emergency room by ambulance for a diagnosed migraine headache. Vicodin, Ibuprofen, and Penicillin were prescribed. He was back at the emergency room the next week and was diagnosed with chronic migraine headaches. It was noted that a May 20 CT scan was negative. Imitrex was prescribed.

The ALJ's opinion goes on to state:

> Treatment notes from Evanston Hospital outpatient clinic reflect follow-up treatment between May 1998 and December 1998. Undated reports apparently from May or June 1998, reflect a medical history provided by the claimant of increasing frequency of headaches in the past number of months, as well as reports of headache related symptoms (such as his legs go numb or go out, visual blurring, photophobia, slurring of speech). He had essentially normal evaluations. He was prescribed medications of Motrin and Inderal, but he remained neurologically intact. He had full sensation. No specific then present complaints or then required treatment were noted. The diagnosis at this time was neurological migraine by history, with normal neurological exam.

Plaintiff was at the clinic again on July 7 and July 14, with medications again being provided. He was also at the clinic in August and on December 16, 1998, at least in part to have disability forms completed. Midrin was being prescribed and he complained of three severe headaches per week.

The ALJ states:

> On December 28 and on December 29, 1998 the claimant returned to the clinic, seeking an incapacity evaluation. There was nothing to report clinically, although the claimant still complained of headaches with medications and drowsiness. The treating physician discontinued Motrin due to complaints of side effects, and prescribed Durdrin and ERCAF. Imitrex was considered as a possible future medication, but further evaluation of the claimant was deemed necessary before prescribing same. Mr. Crowder did not return to the clinic. No records reveal any specific intervention on any other dates that the claimant attended the clinic. There are no records of treatment postdating December 1998. The record in this case was held open until May, 1999, and counsel, as of May 12, 1999, indicates

that there has been no treatment since December 1998.

The ALJ found that plaintiff testified that, prior to January 1996, plaintiff had headaches approximately twice a week. From March 1997 on, he had severe headaches 10 to 12 times a month, with each headache lasting from one-half to a full day. In between, he had less severe headaches. Two days was the longest he went without headaches. Plaintiff kept a diary from December 1998 through April 1999 that recorded headaches daily or every other day, with a myriad of symptoms. The severe headaches would be accompanied by dizziness, light sensitivity, sound sensitivity, visual spots, pain in the neck and shoulder, slurring of speech, and numb hands. When he had a migraine, plaintiff could do virtually nothing. When not having symptoms, he spent much of the day sitting around being afraid to trigger a headache. Plaintiff reported that, when he did not have symptoms, he could lift and carry 50 pounds. The woman who had been living with plaintiff for the past three years also testified and corroborated plaintiff's descriptions of his symptoms and frequency of headaches.

The Appeals Council considered one additional piece of medical evidence, medical records showing a September 28, 1999 appointment at the clinic. The doctor prescribed Inderal and Imitrex for migraine headaches.

The ALJ gave the following explanation for finding plaintiff's testimony as to his symptoms to be not fully credible, stating:

> . . . Troubling is the fact that, with such frequency/long duration of episodes, there is no record of hospital, emergency room, or physician intervention for any purpose (including a change or increase in medications) during the entire four month period [December 1998 to April 1999]. Per Exhibit 7F submitted by the claimant's attorney after the hearing, the claimant has not been to the local clinic since December 1998.
>
> * * *
>
> Notably, the claimant has not received the type of medical treatment one would expect for a totally disabled individual. He only sought medical treatment during a ten month period (February to December, 1998). Even this length is questionable, as there is a gap from August 1998 until December 1998, when he came returned with forms to complete for disability purposes. He first sought medical treatment eleven months after his asserted onset date, even though he claimed to have been fired for excessive absenteeism due to headaches. This is not the typical level of treatment normally seen by an individual who has been disabled for twelve consecutive months.
>
> The record reveals relatively sporadic trips to the doctor. For example, despite complaining [of] such incapacitating headaches as described in his headache log, the claimant did not go to the clinic to even seek a change in medication, much less attend the neurology consultation he was referred to. This inconsistency in treatment suggests that his symptoms do not prevent him from performing work-related activities.
>
> Further, a review of claimant's work history shows that the claimant only worked sporadically (very sporadically) prior to filing for supplemental security income which raises a question as to whether the claimant's continuing unemployment is actually due to mental impairments.
>
> Although the testimony of the witness at the hearing was generally corroborative of the claimant's allegations, and has been duly considered, the close relationship between the

> witness and the claimant cannot be entirely
> ignored in deciding how much weight it deserves.
> In view of all of the factors discussed
> above, the limitations on the claimant's capacity
> which were described earlier in this decision are
> warranted. No additional or greater limitations
> are justified.

Plaintiff contends that the ALJ did not have an adequate basis for rejecting his credibility and his witness's credibility. He contends that the ALJ should have obtained the testimony of a medical expert concerning the finding that plaintiff's treatments were not consistent with the type of care a person would seek for a migraine condition. Plaintiff also contends that, although the ALJ found plaintiff's testimony to be noncredible, he failed to make a finding as to the actual frequency and severity of his headaches. Plaintiff contends that the evidence supports that his headaches were a nonexertional impairment that would result in frequent absences from work and therefore it was inappropriate to use the grids instead of obtaining the opinion of a vocational expert with respect to the work available for a person with his disability.

An ALJ's credibility determinations generally will not be overturned unless "patently wrong." Zurawski, 245 F.3d at 887 (quoting Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000)).

> . . . Under Social Security Ruling 96-7p,
> the ALJ's determination or decision regarding
> claimant credibility "must contain specific
> reasons for the finding on credibility, supported
> by the evidence in the case record, and must be
> sufficiently specific to make clear to the
> individual and to any subsequent reviewers the
> weight the adjudicator gave to the individual's

>statements and the reasons for that weight." In
>this regard it is not sufficient for the
>adjudicator to make a single, conclusory
>statement that "the individual's allegations have
>been considered" or that "the allegations are (or
>are not) credible." Id. It is also not enough
>for the adjudicator simply to recite the factors
>that are described in the regulations for
>evaluating symptoms.
>* * *
>With respect to there being "inconsistencies"
>with the medical evidence, we have instructed
>that:
>>If the allegation of pain is not supported
>>by the objective medical evidence in the
>>file and the claimant indicates that pain is
>>a significant factor of his or her alleged
>>inability to work, then the ALJ must obtain
>>detailed descriptions of claimant's daily
>>activities by directing specific inquiries
>>about the pain and its effects to the
>>claimant. She must investigate all avenues
>>presented that relate to pain, including
>>claimant's prior work record information and
>>observations by treating physicians,
>>examining physicians, and third parties.
>>Factors that must be considered include the
>>nature and intensity of claimant's pain,
>>precipitation and aggravating factors,
>>dosage and effectiveness of any pain
>>medications, other treatment for the relief
>>of pain, functional restrictions, and the
>>claimant's daily activities.
>
>Luna v. Shalala, 22 F.3d 687, 691 (7th Cir. 1994)
>(citations omitted). But, where the medical
>signs and findings reasonably support a
>claimant's complaint of pain, the ALJ cannot
>merely ignore the claimant's allegations. Id.

Zurawski, 245 F.3d at 887-88.

While there is no dispute that plaintiff does not have the neurological findings or other criteria to satisfy any listing for migraine headaches, the ALJ did find that plaintiff had a medically determinable history of migraine headaches. Although finding plaintiff had migraine headaches, the ALJ

implicitly fails to find that plaintiff had any headache symptoms. While the ALJ does not explicitly state to what extent he found plaintiff's testimony noncredible, he does not take any symptoms into account in determining the work that plaintiff can perform. It is inconsistent to find that plaintiff had headaches, but to fail to determine all the effects of the headaches. In any event, plaintiff is correct in contending that the record supports that the headaches the ALJ found caused plaintiff to miss some worktime, either partial or whole days.

The ALJ discounted plaintiff's testimony primarily because he did not find the frequency of visits to doctors to be consistent with plaintiff's testimony. The ALJ ignored that plaintiff was on general assistance and his medical treatment was limited to what general assistance would permit. After some initial visits to the emergency room, plaintiff was instructed that general assistance would only pay for further emergency room visits that were approved in advance. Plaintiff was essentially limited to visiting a hospital clinic and receiving treatment from the particular doctor who was available. He was not sent to a headache clinic nor a regular general physician. The records that were found[2] show that plaintiff was prescribed 12 different medications in an attempt to control his headaches. This indicates an attempt to seek treatment for a serious problem.

---

[2] Some of the records are incomplete and plaintiff contends that there may have been additional appointments for which records were not found.

Also, there is no medical record showing that plaintiff was given additional appointments for which he failed to appear nor any medical evidence that additional appointments might have resulted in additional types of treatment. The available medical records do not support (and the ALJ did not seek a medical opinion) that plaintiff's treatment was inconsistent with a patient (particularly one on general assistance) having the symptoms plaintiff reports. See Caviness v. Apfel, 4 F. Supp. 2d 813, 820-21 (S.D. Ind. 1998).

The ALJ also relied on other grounds in rejecting plaintiff's credibility. However, those other grounds are not so convincing that it could be assumed that the ALJ would have found plaintiff noncredible even absent the inference the ALJ drew from the frequency of plaintiff's medical appointments. Plaintiff's lack of a consistent work history does not necessarily point to the present claims being fabricated. It is equally noteworthy that plaintiff did not previously seek a finding of disability and that he did not seek unemployment compensation following his last termination. The inference could instead be drawn that the severity of plaintiff's headaches increased so that he no longer believed he was able to work and therefore would not qualify for unemployment compensation and, for the first time, would qualify for disability benefits. As to rejecting the testimony of the corroborating witness, her apparent bias probably would not have been a basis for rejecting her testimony if the ALJ did not have

other reasons for rejecting plaintiff's testimony. Cf. Caviness, 4 F. Supp. 2d at 823.

As presently constituted, the record does not contain a sufficient basis for finding that plaintiff's migraine headache symptoms were so limited as to have no effect on his ability to work. On remand, it will be left to the ALJ as to whether he will accept plaintiff's testimony or instead consider additional evidence in determining the extent of plaintiff's actual symptoms. It will be left to the ALJ as to what additional evidence, if any, he will consider. He may seek the advice of a medical expert and/or he may further question plaintiff regarding his decisions to seek medical help. Cf. Green v. Apfel, 204 F.3d 780, 781-82 (7th Cir. 2000); Thompson v. Sullivan, 933 F.2d 581, 585-86 (7th Cir. 1991). In either event, the ALJ must clearly state the nature, extent, and effect of the symptoms that he finds plaintiff actually has. Zurawski, 245 F.3d at 887. If it is found that plaintiff's symptoms have a nonexertional affect on his ability to work, the ALJ cannot rely on the grids and instead must seek the opinion of a vocational expert in determining whether there is available work in the economy that plaintiff can perform. See Baker v. Apfel, 159 F.3d 1140, 1145 (8th Cir. 1998); Hahn v. Apfel, 993 F. Supp. 689, 693, 696 (S.D. Iowa 1998).

IT IS THEREFORE ORDERED that Acting Social Security Commissioner Larry G. Massanari is substituted for Kenneth S. Apfel as the defendant in this case. The Clerk of the Court is

directed to accordingly amend the docket. Plaintiff's motion for summary judgment [5-1] is granted and defendant's motion for summary judgment is denied. The Clerk of the Court is directed to enter judgment in favor of plaintiff and against defendant vacating the decision of the Commissioner and remanding this case for further proceedings.

ENTER:

*[signature]*
UNITED STATES DISTRICT JUDGE

DATED: June 6, 2001